**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY PENSION PLAN; BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY INDIVIDUAL ACCOUNT PLAN; and BOARD OF DIRECTORS OF THE MOTION PICTURE INDUSTRY HEALTH PLAN,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>OIL FACTORY, INC.,<br><br>　　　　　Defendant. | CV 15-9841-RSWL-AGRx<br><br>**ORDER** re Motion by Plaintiffs for Entry of Default Judgment [12] |

Currently before the Court is Plaintiffs' unopposed Motion for Entry of Default Judgment [12] ("Motion" or "Motion for Default Judgment"). Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **GRANTS** Plaintiffs' Motion [12] and awards $63,777.20 in

damages to Plaintiffs.

## I. BACKGROUND

**A.  Factual Background**

Plaintiffs are the Boards of Directors of the Motion Picture Industry Pension Plan, the Motion Picture Industry Individual Account Plan, and the Motion Picture Industry Health Plan ("Plans").  Compl. ¶ 3.

The Plans are employee welfare benefit and pension plans within the meaning of section 3(1) and (2)(A) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and are multiemployer plans within the meaning of section 3(37)(A) of ERISA.  Id. at ¶ 4. The Plans are subject to the provisions of section 302 of the Labor Management Relations Act, 29 U.S.C. § 186 ("LMRA").  Id. at ¶ 3.

Beginning in 1999, Defendant Oil Factory, Inc. ("Defendant") executed a series of Consent Agreements and Memorandum Agreements, agreeing to be bound to the following collective bargaining agreements: (1) the Music Video Production Agreement between the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, AFL-CIO ("IATSE") and the Music Video Producers Association ("MVPA"); (2) the Commercial Production Agreement between IATSE and several of its Local Unions, and the Association of Independent Commercial Producers, Inc. ("AICP"); (3)

1  the Teamsters Music Video Agreements between Studio
2  Transportation Drivers Local 399 of the International
3  Brotherhood of Teamsters ("Local 399") and the MVPA;
4  and (4) the Teamsters Commercial Agreements between
5  Teamsters Local Unions and the AICP.  Declaration of
6  Chris Tashchyan ("Tashchyan Decl.") ¶¶ 6A-6E, Exs. 1-4.
7       Defendant also executed Trust Acceptances which
8  required Defendant to become a party to and participate
9  in the Plans, and to make contributions to the Plans on
10 behalf of covered employees.  Id. at ¶ 7, Ex. 5.  By
11 virtue of the Consent Agreements, Memorandum
12 Agreements, and Trust Acceptances, Defendant agreed to
13 be bound to the Declarations of Trust establishing the
14 respective Plans ("Trust Agreements").  Id. at ¶¶ 8A-
15 8F, Exs. 6-8.
16      The Trust Agreements require Defendant to submit a
17 report and to pay contributions on a weekly basis to
18 the Plans for each hour worked by or guaranteed to
19 Defendant's employees.  Contributions are delinquent if
20 they are not received within five (5) days[1] from the
21 date such contributions became due.  Id. at ¶ 8A, Ex.
22 6, pp. 123-24; Ex. 7, pp. 130-32; Ex. 8, pp. 136-39.
23      The Trust Agreements provide for the assessment an

---

[1] The Trust Agreements state that "failure of an Employer to pay the contributions as required hereunder within ten (10) working days after the end of the payroll weeks shall constitute a violation . . . and shall subject the Employer to such remedies as are herein specified." Compare Compl. ¶ 11, and Tashchyan Decl. ¶ 8A, with Ex. 6, pp. 123-24; Ex. 7, pp. 130-32; Ex. 8, pp. 136-69.  This discrepancy is immaterial.

3

1  interest rate of one percent (1%) per month on
2  delinquent contributions, commencing when payment was
3  due and continuing to the date when payment is made.
4  Id. at ¶ 8E, Ex. 6, p. 124; Ex. 7, p. 130; Ex. 8, p.
5  137.  In addition, the Trust Agreements require payment
6  of liquidated damages for delinquent contributions.
7  The amount of liquidated damages is the greater of
8  either: (1) twenty percent (20%) of all unpaid
9  contributions; or (2) interest calculated at a rate of
10 one percent (1%) per month from the due dates until the
11 date when payment is made.  Id. at ¶ 8F, Ex. 6, pp.
12 125-25; Ex. 7, p. 131; Ex. 8, p. 137-38.
13      Finally, the Trust Agreements provide that
14 employers are liable for all expenses of collection,
15 including all costs, reasonable accountant's fees,
16 auditor's fees, and attorney's fees.  Id. at ¶ 8D, Ex.
17 6, p. 127; Ex. 7, p. 133; Ex. 8, p. 140.
18      On September 24, 2013, Plaintiffs completed an
19 audit of Defendant's records (the "Audit").  Compl. ¶
20 13.  The Audit revealed that Defendant failed to
21 properly report and pay contributions due under the
22 Plans in the amount of $14,560.53 for the period of
23 January 1, 2003 to December 22, 2007.  Tashchyan Decl.
24 ¶ 9, Ex. 9; Compl. ¶¶ 7-20.
25 / / /
26 / / /
27 / / /
28 / / /

1  Plaintiffs seek recovery of the delinquent
2  contributions as follows:

| | |
|---|---:|
| Contributions (1/1/03-12/22/07) | $14,560.53 |
| Interest (through 4/30/16) | 17,238.89 |
| Liquidated damages (through 4/30/16) | 17,238.89 |
| Audit fees | 10,305.00 |
| Attorney's fees (L.R. 55-3) | 3,973.73 |
| Litigation costs | 460.16 |
| **TOTAL** | 63,777.20 |

Tashchyan Decl. ¶ 13; Compl. 6:16-7:13.

**B.   Procedural Background**

On December 22, 2015, Plaintiffs filed their Complaint [1] for breach of contract and violation of ERISA.

Defendant was served with the summons and Complaint on January 8, 2016. Proof of Service, ECF No. 8. Defendant did not appear or otherwise respond to the Complaint.[2]

On February 4, 2016, Plaintiffs requested the Clerk to enter default against Defendant [9]. The Clerk entered Defendant's default on February 5, 2016 [10].

On April 1, 2016, Plaintiffs filed the instant Motion for Default Judgment [12]. No opposition was filed, and the matter was taken under submission on April 28, 2016 [15].

---

[2] Defendant was required to respond to Plaintiff's Complaint no later than January 29, 2016. Fed. R. Civ. P. 12(a).

5

## II. DISCUSSION

**A.  Legal Standard**

Pursuant to Federal Rule of Civil Procedure 55(b), a court may enter default judgment following the entry of default by the Clerk of Court.  See PepsiCo, Inc. v. Cal. Security Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

In the Central District of California, motions for default judgment must include the following information:

(a) When and against what party the default was entered;

(b) The identification of the pleading to which default was entered;

(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and

(e) That notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2).

L.R. 55-1.

The decision to enter default judgment against parties whose default has been taken pursuant to Federal Rule of Civil Procedure 55(b) is within the discretion of the district court.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980); see Fed. R. Civ.

P. 55.  The Ninth Circuit has directed that courts consider the following factors (collectively, the "Eitel factors") in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether defendant's default was the product of excusable neglect, and (7) the strong public policy favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); see also Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1005 (C.D. Cal. 2014).

    Once a party's default has been entered, the factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party.  See Fed. R. Civ. P. 8(b)(6); Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977).  The Court, however, must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  Vogel, 992 F. Supp. 2d at 1005 (citations omitted).

    If the Court determines that the allegations in the complaint are sufficient to establish liability, the plaintiff must provide proof of all damages sought in the complaint, and the Court must determine the "amount

and character" of the relief that should be awarded. Id. at 1005-06 (citations omitted); PepsiCo, 238 F. Supp. 2d at 1175. Federal Rule of Civil Procedure 54(c) requires that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**B.  Discussion**

    1.  Procedural Requirements

Plaintiffs satisfy the procedural requirements for default judgment pursuant to Federal Rules of Civil Procedure 55 and 54(c), and Local Rule 55-1.

Pursuant to Federal Rule of Civil Procedure 55(a), the Court Clerk properly entered default against Defendant. Plaintiffs properly moved pursuant to Rule 55(b) for entry of default judgment.

As required by Local Rule 55-1, Plaintiffs' Motion provides proof that: (1) default was entered against Defendant on February 5, 2016; (2) Defendant failed to respond to the Complaint; (3) Defendant is neither an infant nor an incompetent person; (4) Defendant is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940; and (5) Defendant was served with notice of the Motion for Default Judgment on April 1, 2016.

Finally, the Motion complies with Federal Rule of Civil Procedure 54(c) because it requests a remedy that is not different in kind from that prayed for in the Complaint.

2. Eitel Factors

    a. *Possibility of Prejudice to Plaintiff*

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. Vogel, 992 F. Supp. 2d at 1007. Plaintiffs contend that Defendant failed to pay contributions as required by the Trust Agreements, and that Plaintiffs have been damaged as a result. Given Defendant's refusal to pay the sums due, Plaintiffs will suffer prejudice because they "will likely be without other recourse for recovery" if default judgment is not entered. See id. This factor favors entry of default judgment.

    b. *The Merits of Plaintiffs' Claims and Sufficiency of the Complaint*

The second and third Eitel factors "require that a plaintiff state a claim on which [it] may recover." Id. (citations omitted). Plaintiffs' Complaint adequately states claims for (1) breach of contract, and (2) violation of ERISA § 515.

    i. *Plaintiffs have standing.*

Section 301 of the LMRA has ben interpreted broadly to include suits by third party beneficiaries of an agreement between an employer and a labor organization. See Audit Servs., Inc. v. Rolfson, 641 F.2d 757, 760 (9th Cir. 1981). Additionally, Plaintiffs have standing to assert their claim under ERISA. See Laborers Health & Welfare Trust Fund v. Advanced

9

Lightweight Concrete Co., 484 U.S. 539, 547 (1988) ("The liability created by [ERISA] § 515 may be enforced by the trustees of a plan by bringing an action in federal court[.]"). Thus, Plaintiffs are entitled to enforce the Trust Agreements against Defendant.

### ii. *Plaintiffs' action is timely.*

The statute of limitations in a federal ERISA action in this Court is the four-year limitations period provided by California law for breach of a written contract. See N. Cal. Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc., 906 F.2d 1371, 1372 (9th Cir. 1990). The statute of limitations begins to accrue when the plaintiff knows or has reason to know of the injury that is the basis of the action. Id. Here, Plaintiffs first learned of Defendant's breach of the Trust Agreements through the Audit conducted on September 24, 2013. Tashchyan Decl. ¶ 9, Ex. 9. This action filed on December 22, 2015, was therefore brought within California's four-year limitations period which applies to ERISA actions.

### iii. *Plaintiffs show that Defendant violated ERISA and the Trust Agreements.*

The evidence submitted by Plaintiffs shows that Defendant is bound by the terms and conditions of the Trust Agreements, and that Defendant failed to report

and pay contributions, as required by the Trust Agreements.  Plaintiffs show that Defendant breached the Trust Agreements, and thereby violated section 515 of ERISA, which requires employers participating in multiemployer plans to pay contributions in accordance with the terms of the plans.

      iv. *The remedies sought are authorized by ERISA and the Trust Agreements.*

  When judgment is entered in favor of an ERISA plan in an action to enforce ERISA § 515, ERISA § 502(g)(2) requires the Court to award unpaid contributions, interest on unpaid contributions, an amount equal to the greater of interest on unpaid contributions or liquidated damages provided under the plan, reasonable attorney's fees and costs, and other such legal or equitable relief as the Court deems appropriate.  29 U.S.C. § 1132(g)(2).  The Trust Agreements state that a delinquent employer is liable for delinquent contributions, interest, liquidated damages, and all expenses of collection, including attorney's fees, costs, and auditor fees.  Tashchyan Decl. ¶ 8A-8F, Exs. 6-8.  Accordingly, the remedies sought by Plaintiffs are authorized by ERISA and the Trust Agreements.  See Compl. 6:17-7:13.

    c. *The Sum of Money at Stake*

  The fourth Eitel factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct."  Vogel, 992 F. Supp. 2d at

1012. Here, the amount sought for delinquent contributions is derived from the Audit, and includes sums mandated by ERISA and provided for by the Trust Agreements. Accordingly, default judgment in the amount sought by Plaintiffs is appropriate.

        d. *The Possibility of Dispute*

The fifth Eitel factor considers the possibility that material facts are disputed. Id. By virtue of having defaulted, Defendant has admitted all factual allegations contained in the Complaint, and no genuine dispute of material fact exists that would preclude the Court from granting Plaintiffs' Motion. Because Plaintiffs' factual allegations are presumed true, and Defendant has failed to oppose this Motion, this factor favors the entry of default judgment against Defendant. See id. at 1012-13.

        e. *The Possibility of Excusable Neglect*

The seventh Eitel factor considers whether a defendant's default may have resulted from excusable neglect. Id. at 1013. Nothing in the record indicates excusable neglect. Defendant was properly served with the summons, Complaint, and Motion for Default Judgment, which indicates that Defendant had adequate notice of the action. See Shanghai Automation Instrument Co., Ltd. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because defendants were properly served with the complaint, notice of entry of default, and papers in support of

12

motion for default judgment).

   f. *Policy Favoring Decisions on the Merits*

 "Cases should be decided upon the merits whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." <u>PepsiCo</u>, 238 F. Supp. 2d at 1177. Since Defendant failed to appear and defend itself, the seventh <u>Eitel</u> factor does not preclude the entry of default judgment against it. <u>Vogel</u>, 992 F. Supp. 2d at 1013.

   g. *Conclusion Regarding the* <u>Eitel</u> *Factors*

 Aside from the policy of deciding cases on the merits, all of the <u>Eitel</u> factors weigh in favor of entry of default judgment.

  3. <u>Character and Amount of Plaintiffs' Recovery</u>

 As mentioned above, Plaintiffs seek recovery for delinquent contributions, interest, liquidated damages, audit fees, attorney's fees, and litigation costs, as provided for in the Trust Agreements and by ERISA. The damages requested by Plaintiffs are the same damages identified in the Complaint. Plaintiffs also submit the Tashchyan Declaration and accompanying exhibits,[3] and the Declaration of Kathryn J. Halford ("Halford

---

[3] The Audit Report (Exhibit 9), the Consent Agreements and Memorandum Agreements (Exhibits 1-4), Trust Acceptances (Exhibit 5), and the copies of the pertinent sections of the Trust Agreements for the Health Plan, Pension Plan, and Individual Account Plan (Exhibits 6-8) are sufficient to "prove up" Plaintiffs' damages. <u>See</u> <u>Vogel</u>, 992 F. Supp. 2d at 1013 (citation omitted).

Declaration") as affirmative evidence of damages, attorney's fees under Local Rule 55-3, and litigation costs. Accordingly, the Court awards Plaintiffs' requested damages in the amount of $63,777.20.

### III. CONCLUSION

For the reasons stated, the Court **GRANTS** Plaintiffs' Motion [12] and enters default judgment against Defendant and in favor of Plaintiffs. The Court awards $63,777.20 in total damages: $14,560.53 for delinquent contributions; $17,238.89 in interest; $17,238.89 in liquidated damages; $10,305.00 for Audit fees; $3,973.73 in attorney's fees; and $460.16 in litigation costs.

**IT IS SO ORDERED.**

DATED: May 25, 2016        s/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge